UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
New York Division
-----------------------------------------------------------------x
                                                                 :
DUNKIN' DONUTS FRANCHISED                                        :
   RESTAURANTS LLC,                                              :
   a Delaware Limited Liability Company,                         :
                                                                 :
DD IP HOLDER LLC,                                                :
   a Delaware Limited Liability Company,                         :
                                                                 :
                    Plaintiffs,                                  :
                                                                 :
         v.                                                      :   C.A. No. 07-CV-3699 (HB)
                                                                 :
AKCL INT'L GROUP, LTD.,                                          :
   a New York Corporation                                        :
                                                                 :
                    Defendant.                                   :
-----------------------------------------------------------------x

## COMPLAINT

### Parties

1. Plaintiff Dunkin' Donuts Franchised Restaurants LLC ("Dunkin'" or "Dunkin' Donuts"), successor-in-interest to Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021. It is engaged in the business of franchising independent business persons to operate Dunkin' Donuts shops throughout the United States. Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts System, which involves the production, merchandising, and sale of doughnuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2. Plaintiff DD IP Holder LLC, Dunkin's wholly-owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. DD IP Holder LLC has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops. Unless otherwise specified, Dunkin Donuts Franchised Restaurants LLC and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin'" or "Dunkin' Donuts."

3. Defendant AKCL Int'l Group, Ltd. is a New York corporation with its principal place of business at 215 First Avenue, New York, New York 10003. At all times relevant to this action, AKCL Int'l Group, Ltd. has been the owner and operator of a retail doughnut shop located at 215 First Avenue, New York, New York 10003 ("Defendant's Shop"). Defendant is a Dunkin' Donuts franchisee for Defendant's Shop pursuant to a Franchise Agreement dated March 10, 2004 (the "Franchise Agreement"). Defendant is licensed to use the Dunkin' Donuts trademarks, trade name and trade dress.

## Jurisdiction and Venue

4. This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## Background Facts

6. Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

7.      DD IP Holder LLC, is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.  Dunkin' Donuts has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

8.      DD IP Holder LLC owns numerous federal registrations for the mark Dunkin' Donuts, and related marks.  Among those registrations are Registration Nos. 748,901, 1,148,165, and 1,159,354.  Each of these registrations is in full force and effect, and is incontestable, pursuant to 15 U.S.C. § 1065.

9.      The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

10.     The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

11.     The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years.  Dunkin' Donuts and its franchisees have expended approximately $875,000,000 in advertising and promoting the Dunkin' Donuts marks over the last twenty-nine years.  Dunkin' Donuts spent approximately $94,000,000 in fiscal year 2000 alone on advertising and promotion.

12.     Dunkin' Donuts and its franchisees currently operate approximately 4,100 shops in the United States and 1,800 shops outside of the United States.  Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style.  In the more than forty years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

13. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

14. Maintenance of the highest standards of health, sanitation, and safety is essential to the development and maintenance of the reputation and goodwill of Dunkin' Donuts. These standards are important to Dunkin' Donuts and to each franchisee.

15. The goodwill and reputation associated with the Dunkin' Donuts marks are impaired when a franchisee fails to maintain standards and operates an unsanitary or unsafe business under the Dunkin' Donuts trademarks.

## **Defendant's Use of Dunkin's Marks**

16. Defendant is licensed to use the Dunkin' Donuts trade name and trademarks in accordance with the terms of the Franchise Agreement.

17. Dunkin' provides each of its franchisees a set of manuals and guidelines (collectively referred to hereinafter as the "Dunkin' Manuals") which set forth in detail the procedures, methodology and standards applicable to the operation of a Dunkin' Donuts shop. These documents include:

 a. The Network Administration Manual, which includes detailed sections on Operations Assessment for Customer Satisfaction (Chapter 5), Building and Site Maintenance (Chapter 11), Sanitation (Chapter 13), and Standards (Chapter 14);

 b. The Production and Distribution Manual, which includes detailed sections

on Cleaning, Sanitizing and Maintaining Production Area Equipment (Chapter 1) and the production and handling of food products;

    c.    The Customer Service Manual, which includes detailed sections on Receiving and Storing Raw Materials (Chapter 1), Service Procedures (Chapter 3), Procedure for Brewing and Serving Coffee (Chapter 4), Heating and Serving Bakery Products (Chapter 6), Making and Serving Sandwiches (Chapter 7), Procedures for Preparing and Serving Soup (Chapter 8), and Cleaning, Sanitizing and Maintaining Sales Area Equipment (Chapter 9); and

    d.    The Retail Food Safety System Manual.

18.    Taken together, the Dunkin' Manuals provide detailed and specific guidance and standards regarding health, sanitation, and safety.

19.    The Franchise Agreement executed by Defendant contains acknowledgments and agreements by the Defendant concerning the importance of maintaining Dunkin's standards for health, sanitation, and safety. For example, the applicable paragraphs of the Franchise Agreement include:

> a.     Sections 5.0 and 5.1: FRANCHISEE understands and acknowledges the importance to FRANCHISOR, FRANCHISEE and other franchisees, of FRANCHISEE's commitment to at all times operate the Unit in accordance with FRANCHISOR's Standards (as defined in Definitions paragraph "I"), in order to increase the demand for FRANCHISOR's products, to protect and enhance the reputation and goodwill of FRANCHISOR, to promote and protect the value of the Proprietary Marks and other reasons. FRANCHISEE agrees to devote continuous best efforts to successfully develop, manage and operate the Unit and to enhance the goodwill of the Proprietary Marks authorized by this Agreement and the System(s) as a whole. . . . FRANCHISEE further agrees as follows:
>
> b.     Section 5.1.1: FRANCHISEE shall use all products, materials, ingredients, supplies, paper goods, uniforms, fixtures, furnishings, signs, equipment, methods of exterior and interior design and construction and methods

of product storage, handling, preparation, packaging, delivery and sale prescribed by FRANCHISOR.  All such items must conform to FRANCHISOR's Standards.  FRANCHISOR reserves the right to specify any item by brand.  FRANCHISEE shall carry out the business covered by this Agreement in accordance with the operational Standards established by FRANCHISOR and set forth in FRANCHISOR's operating manuals and other documents as they presently exist or shall exist in the future or as may be otherwise disclosed to franchisees from time to time.

        c.     Section 5.1.6:  FRANCHISEE shall maintain, at all times and at FRANCHISEE's expense, the interior and exterior of the Unit and all fixtures, furnishings, signs and equipment in the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required by FRANCHISOR.

20.     The Franchise Agreement also contains acknowledgments and agreements concerning the use of Dunkin' Donuts' proprietary marks.  The relevant sections include:

        a.     Sections DD-7 7.0 and 7.1:  FRANCHISEE acknowledges and agrees that ***Dunkin' Donuts***® is a registered trademark owned or controlled by DUNKIN' DONUTS; that said mark has been and is being used by DUNKIN' DONUTS and by its franchisees and licensees; that said mark, together with the other Proprietary Marks presently owned or controlled by DUNKIN' DONUTS or which may be acquired in the future, constitutes part of the Dunkin' Donuts System; that valuable goodwill is associated with and attached to said mark and the other Dunkin' Donuts Proprietary Marks. . . . FRANCHISEE agrees to use the Proprietary Marks only in the manner and to the extent specifically licensed by this Agreement.

        b.     Sections 8.0 and 8.0.1:  [N]either FRANCHISEE, nor any partner, officer, director, shareholder or member of FRANCHISEE, as the case may be, shall . . . do or perform, directly or indirectly, any . . . act injurious or prejudicial to the goodwill associated with FRANCHISOR's Proprietary Marks and System(s).

21.     The Franchise Agreement (at Section 9.3) provides that Defendant shall pay to Dunkin' all damages, costs and expenses, including attorneys' fees, incurred by Dunkin' as a result of any breach of the Franchise Agreement by Defendant and Defendant's failure to cure said default following notice.

22.     Maintenance of the highest standards of health, sanitation, and safety is essential

to the development and maintenance of the reputation and goodwill of Dunkin'.

23. On April 19, 2007 Defendant's Shop was inspected by a representative of the Steritech Group, Inc. ("Steritech"), a third-party hired by Dunkin' Donuts to conduct food safety inspections. Defendant's Shop was identified as containing numerous standards violations relating to health, sanitation, and safety which were damaging to Dunkin's reputation and goodwill.

24. On April 19, 2007, a Steritech representative hand-delivered to Defendant's Shop a Notice to Cure listing the standards violations at the Shop and requesting that the violations be cured immediately.

25. On April 25, 2007, a Dunkin' representative reinspected Defendant's Shop. Numerous standards violations remained uncured.

26. Despite the fact that Dunkin' has brought standards violations to the attention of Defendant, Defendant has failed to cure these violations and bring its shop into conformity with the required standards.

27. Defendant's actions have caused and continue to cause irreparable harm to Dunkin', including harm to Dunkin's reputation and goodwill. Granting the requested injunctive relief would not harm any third parties and would advance the public interest.

## COUNT I

### (Breach of Contract)

28. The allegations of paragraphs 1 through 27 are hereby incorporated by reference.

29. The failure of Defendant to maintain Defendant's Shop and to conduct business in a manner which conforms to the standards established by Dunkin' in the Franchise Agreement and the Dunkin' Manuals constitutes a breach of the contractual obligations and agreements

undertaken by Defendant in the Franchise Agreement.

30. These breaches of the Franchise Agreement constitute irreparable injury to the reputation and goodwill associated with the trademarks, trade name, and trade dress of Dunkin' and its other franchisees.

31. As a direct and proximate result of these breaches, Dunkin' has incurred substantial losses, fees, and expenses.

## COUNT II

### (Trademark Infringement)

32. The allegations of paragraphs 1 through 31 are hereby incorporated by reference.

33. Defendant's use in commerce of the Dunkin' Donuts trademarks and trade name outside the scope of its Franchise Agreement and without Dunkin' Donuts' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendant is licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin' Donuts. Such continued use of the Dunkin' Donuts trademarks and trade name infringes Dunkin' Donuts' exclusive rights in the Dunkin' Donuts trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

34. As a result of Defendant's actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount yet to be determined.

## COUNT III

### (Unfair Competition)

35. The allegations of paragraphs 1 through 34 are hereby incorporated by reference.

36. Defendant's use in commerce of the Dunkin' Donuts trademarks and trade name

outside the scope of its Franchise Agreement and without Dunkin' Donuts' consent is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services or commercial activities by another person. Such unauthorized use of the Dunkin' Donuts trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

37. As a result of Defendant's actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount yet to be determined.

## COUNT IV

### (Trademark Dilution)

38. The allegations of paragraphs 1 through 37 are hereby incorporated by reference.

39. Defendant's commercial use in commerce of the Dunkin' Donuts trademarks and trade name outside the scope of its Franchise Agreement and without Dunkin' Donuts' consent causes dilution of the distinctive quality of the Dunkin' Donuts trademarks and trade name. Such unauthorized use of the Dunkin' Donuts trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(c), and applicable state law.

40. As a result of Defendant's actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount yet to be determined.

### **Prayer for Relief**

WHEREFORE, Plaintiff Dunkin' Donuts prays that this Court:

    a. Enjoin Defendant to cease violating at its Shop Dunkin's standards for health, sanitation, and safety as identified on the Quality Assurance Food Safety &

Sanitation Inspection form dated April 25, 2007 within five (5) days of the date of the Court's Order;

      b.      Enjoin Defendant and all those acting in concert with its from infringing upon the Dunkin' Donuts trademarks and trade name, from diluting the Dunkin' Donuts trademarks and trade name, and from otherwise engaging in unfair competition with Dunkin' Donuts;

      c.      Award Dunkin' judgment against Defendant for any damages Dunkin' has incurred as a result of Defendant's actions, including its costs and attorneys' fees incurred in connection with this action; and

      d.      Award Dunkin' such other relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Ronald D. Degen
Ronald D. Degen, Esq. (RD 7808)
Scott Goldfinger, Esq. (SG 9219)
O'ROURKE & DEGEN, PLLC
225 Broadway, Suite 715
New York, New York 10007
Telephone:   (212) 227-4530
Facsimile:   (212) 385-9813
E-mail:      rdegen@odlegal.com

Robert L. Zisk (RZ 1275)
David E. Worthen (DW 8519)
Jimmy Chatsuthiphan (JC 3111)
GRAY, PLANT, MOOTY, MOOTY
 & BENNETT, P.A.
2600 Virginia Avenue, N.W., Suite 1111
Washington, DC 20037
Telephone:   (202) 295-2200
Facsimile:   (202) 295-2250

*Attorneys for Plaintiffs*
Dunkin' Donuts Franchised Restaurants LLC, and
DD IP Holder LLC

Dated: May 10, 2007